# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| AMERICAN SKANDIA LIFE ASSURANCE CORPORATION,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>JANET R. McCARTY, and LISA ANN MUCH  )<br>)<br>Defendants.  ) | No. 07-cv-1214 |

## O P I N I O N  A N D  O R D E R

Before the Court is a Motion for Order of a Final Decree (Doc. 21) filed by Plaintiff, American Skandia, and a Motion for Summary Judgment (Doc. 23) filed by Defendant Lisa Ann Much.  Defendant Janet McCarty filed a Response (Doc. 34) to this Motion for Summary Judgment.  Also before the Court is a Motion to Strike and a Motion for Summary Judgment (Doc. 24; Doc. 35) filed by Defendant Janet McCarty.  Defendant Much filed a Response (Doc. 38) to this Motion.  McCarty, in turn filed a Reply (Doc. 41). This Court ordered Defendant Much to file additional briefing on the issue of hearsay and, after missing the deadline, Much has now filed a Motion for Leave to File her Supplement Brief after the Court imposed deadline. (Doc. 45)  Defendant McCarty filed a Memorandum in Opposition to this Brief.  For the following reasons, the Motions for Summary Judgment and the Motion to Strike are DENIED, and the Motion for Leave to File and the Motion for entry of Order of Final Decree are GRANTED.  All other pending motions are MOOT.

# I.
# BACKGROUND

The facts of this case are fairly straightforward.  Jane Creed (the "Deceased" or "Creed") received financial services from Wachovia Securities LLC.  In 1999, Wachovia provided her an annuity from Plaintiff, American Skandia Life Assurance Corporation.  Creed completed an application form for the annuity and on that application she listed her sister, Defendant Janet McCarty, as the sole beneficiary.  An annuity contract was issued which provided that Creed could change the beneficiary by sending a request in writing.  According to the contract changes are effective only after they have been approved by American Skandia. (Doc. 34 at 2.)

Creed also had a daughter, Defendant Lisa Much.  According to Much, in 2007 Creed wanted to change the beneficiary and name Much as the beneficiary of the annuity. (Doc. 23 at 2.)  Creed called Wachovia on March 15, 2007 (seven days before her death) and requested Wachovia send a change of beneficiary form. (Doc. 23 at 2.) According to Much, Creed filled out her name and address on the change of beneficiary form.  She also signed and dated the form March 20, 2007, but never actually filled out the contents of the forms including the box in the form that named the new beneficiary.  According to Much, Creed mailed in the form along with an attached post-it note.  The note was dated "3/20/2007" and stated as follows: "Leslie, I want to delete Janet R. McCarty and replace it with my daughter, Lisa Ann Much's name.  SS # [redacted].  I am confused about this form."  According to Much, the note was signed by Creed and mailed back to Wachovia where it arrived on March 21, 2007.  On March 22, Creed passed away. (Doc. 23 at 2-3.)

2

McCarty has a different view of the facts. First, McCarty first emphasizes that American Skandia never approved the change in beneficiary. (Doc. 34 at 6.) Second, McCarty puts forward facts that suggest that the change of beneficiary form was not mailed until after Creed's death. McCarty points to a letter from Wachovia which states that Wachovia received a change of beneficiary form on March 25, 2007, three days after Creed's death. (Doc. 34, Ex A.) McCarty also points to deposition testimony in which Much stated that she may have seen the American Skandia documents at Creed's house after Creed's death. However, she was "not sure" and "could not really remember." (Doc. 34, Ex B at 2.) Likewise, McCarty also points to deposition testimony from Creed's son (and Much's brother), Stuart Creed. In his deposition, Stuart Creed states that he recalled seeing the documents with a post-it note on them and nothing written on the post-it note after his mother's death. Further, he could not remember what happened to the documents that he saw in his mother's house. However, according to Stuart, it is possible that the documents were mailed after her death. (Doc. 34, Ex. B at 2-3.)

In addition, McCarty also alleges that Creed only intended to add Much as a contingent beneficiary. McCarty emphasizes the deposition testimony of Victor Russo, a Wachovia agent and Creed's broker. In that testimony, Russo discusses another partially completed document which impacted one of Creed's separate account. In that document, Creed added Much as the *contingent* beneficiary rather than the primary beneficiary. (Doc. 41 at 10; Russo Depo at 33-36.)

3

Much disputes that the change in beneficiary form was mailed after Creed's death and emphasizes that the post-it note itself is dated March 20, 2007. Much also emphasizes a different portion of Russo deposition testimony. Russo states that the packet of material, including the change of beneficiary form arrived on March 21, 2008. (Doc. 38 at 4.) Furthermore, Much highlights additional evidence which only serves to confuse this matter. Much emphasizes a letter from Christy Plunkett, an account administrator at Wachovia that appears as if it was sent to American Skandia. According to the letter, Creed called Wachovia on March 15, 2007 and asked for a change of beneficiary form. The letter inaccurately states that Creed died on March 20, 2007 (Creed died on March 22, 2007) and then states that "[t]he following day we received the paperwork back in the mail and there was a post-it note stuck to the front of the American Skandia Form. . . ." While this letter does state that Wachovia received the change of beneficiary form on March 21, 2008, considering that the letter erred on the date of Creed's death, it is unclear if this letter can be relied upon.

Unfortunately, neither party has come forward with evidence from a postal carrier that could clear up when the change of beneficiary form was mailed. Nevertheless, McCarty and Much have now filed cross-motions for summary judgment.

## II.
## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of

material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

### III.
### ANALYSIS

The parties agree that Creed's annuity specifically stated that "all elections, designations, changes and requests must be in writing and are effective only after they have been approved by us. . . ." (Doc. 1, Ex 1 at 20.) According to McCarty, American Skandia never approved the change in beneficiary so Much is not entitled to the annuity benefits.

Illinois law provides that technical requirements will not defeat the clear and manifested intention of decedent that wished to change a beneficiary designation. See Travelers Ins. Co. v. Smith, 435 N.E.2d 1188, 1190 (1982). *If substantial compliance is proven,* courts will seek to do that which the decedent apparently intended to have done. Id.

There are two cases that form the boundary of our Appellate Court's jurisprudence on this issue. In Rendleman v. Metropolitan Life Ins. Co., 937 F.2d 1292 (7th Cir. 1991) an insured told a friend he should probably change his beneficiary designation to reflect his recent divorce from his wife. It was unclear whether the insured ever obtained the proper forms to change the beneficiary. Id.

6

at 1294.  The insured inevitably died before he completed or sent the change of beneficiary form to his employer and the Seventh Circuit held that the insured did not do all he reasonably could under the circumstances to effect any intention to change the beneficiary.

On the other hand, in Aetna Life Ins. Co. v. Wise 184 F.3d 660 (7th Cir. 1999) an insured was divorced and within two days of the divorce he informed his employer's human resources department of the divorce.  The human resources department sent him a change in beneficiary form with a memo which stated that he should complete all the areas of the form marked 'X.'  However, the beneficiary designation portion of the form did not have an 'X' marked next to it and the insured did not change that section.  In addition, the insured successfully completed two other change of beneficiary forms that named his parents as the beneficiaries of his employer's other benefit programs.  A year and a half later, the insured committed suicide and left a suicide note which stated that he was "leaving everything" to his parents.  Id. at 664-665.  A jury ruled in the parent's favor and our Appellate Court affirmed the denial of the ex-wife's request for summary judgment.  The Court ruled that the insured did everything with his power to clearly manifest his intent to change beneficiaries.  Specifically, he took three importance steps: (1) he obtained the forms, (2) he completed the forms as directed, and (3) he returned the forms to his employer.

The case at bar falls closer to the facts described in Wise than the facts listed in Rendleman.  First, the parties do not dispute that Creed took the first step

7

toward changing the beneficiary and clearly reached out and obtained the form from Wachovia. She filled out her address on the form and signed and dated the form. However, Creed did not take the second step and never filled out the form as directed. Nor did she take advantage of the phone number available on the form to assist in completing the form. Nevertheless, a jury could find that she did in fact draft the note attached to form. In the note, Creed explains that she was confused by the form. This is a clear explanation for failing to complete the form. Indeed, a layperson could easily find this form confusing because the form provides not only for changing the beneficiary but also for making multiple types of changes to the annuity. The six page form contains boxes for an "ownership change," an "annuitant change," an "annuitization date change," a beneficiary change, and a "payee change." (Doc. 38, Ex B.) It is plausible that a layperson would look at this form and be confused as to which section of the form she needed to complete.

      The real dispute in this case is over the third step. Namely the parties dispute whether Creed mailed the form back to Wachovia before her death or whether it was mailed by someone else after her death. At this point there are several different pieces of evidence worth discussing. First, there are two competing letters from Wachovia. One letter from Wachovia states that Wachovia received the change of beneficiary form on March 25, 2007. However, there is also a letter from Wachovia which states that Creed died on the 20 and Wachovia received the form

"the next day."[1] All that can be said is that there is a definite factual dispute between these two letters.

Second, McCarty alleges that Much and Stuart saw the change of beneficiary form in Creed's house after her death. Stuart stated in his deposition that he recalled seeing either the original or copies of the American Skandia form with several post-it notes attached to the document. According to Stuart, the post-it notes simply stated "sign here" and did not have anything else written on them. Assuming that Stuart's testimony is accurate there are still two separate conclusions that can be drawn from his testimony. One conclusion is that the form he saw was a copy of the change of beneficiary form. The form completed by Creed and mailed to Wachovia had the post-it note with writing on it and the copy that Stuart saw did not have any writing on it. Accordingly, there could have been two different copies of the change of beneficiary form. Another possible conclusion is that Stuart saw the original and only copy in his mother's house after her death and that someone besides Creed then added the post-it note suggesting that Much replace McCarty as the beneficiary and mailed the form to Wachovia after Creed's death. The Court cannot assume either conclusion in the absence of additional evidence.

Likewise, Much's testimony does not connote a clear answer either. She stated in her deposition that she saw what looked like the change of beneficiary form. McCarty emphasizes that Much recalled that the attached post-it was pink.

---

[1] While this letter incorrectly states the date of Creed's death, it could still support Much's claim that the letter arrived on March 21, 2007.

9

This Court does not see the significance of the color of the post-it unless the post-it on the form received by Wachovia was of a different color, which may or may not be the case. Instead, the Court notes that McCarty's counsel failed to ask the important question at the deposition. Specifically, counsel never asked Much if anything was written on the pink post-it or if parts of the change of beneficiary form were complete. As a result, the evidence is not clear enough for this Court to take a side in this dispute at this stage.

Finally, Much can also call upon the testimony of Russo that the documents arrived on March 21, 2007. Russo was Creed's stock broker and this evidence weighs in Much's favor.

Should a jury find the facts as stated by Much, then the evidence would reveal that Creed took positive action evidencing an obvious desire to change the beneficiary to her annuity. If this is the case, then this Court must adopt a construction of the annuity that will assist in carrying out that intention and hold that Much is entitled to receive the benefits of the annuity. Connecticut General Life Ins. Co. v. Gulley, 668 F.2d 325, 328 (7th Cir. 1982). On the other hand, if a jury agrees with the facts as described by McCarty, then there would be no basis to conclude that Creed intended to change her beneficiary and McCarty would be entitled to the benefits. Accordingly, the outcome of this case turns on the trier of fact.

# IV.
# ADDITIONAL ISSUES

Previously, Much failed to address the issue of hearsay and this Court ordered additional briefing on the subject. Now, out of an abundance of caution, this Court will allow Much's tardy supplemental brief on the subject of hearsay. (Doc. 45.)

McCarty would like this Court to ignore the partially completed change of beneficiary form and the attached note because they are hearsay. This Court agrees that they are hearsay, however, they fall under the "state of mind" exception codified in Federal Rule of Evidence 803(3). Under Rule 803(3) a party may admit "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). . . ." In this case, the statements within the change of beneficiary form are statements of intent in which Creed potentially stated her intent to change the beneficiary to her annuity. See First Penn-Pacific Life Ins. Co. v. Mock, 85 C 6432, 1986 WL 2535 n. 4 (N.D. Ill. Feb. 11, 1986) (stating that statements concerning a decedent's intent to change a beneficiary to a life insurance policy fall under the "state of mind" exception in rule 803(3)). As a result, the change of beneficiary form and the attached post-it fall with the hearsay exception enumerated in Rule 803(3).

Also before the Court is Plaintiff's Motion for Entry of a Final Decree. (Doc. 21.) Plaintiff, American Skandia, has deposited the disputed funds with the clerk of the Court. The parties previously sought to keep Plaintiff in the case so that they

could conduct discovery of Plaintiff.  Discovery is now complete and there is no basis for Plaintiff to remain in this action.  Accordingly, Plaintiff's Motion is GRANTED.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Entry of a Final Decree is GRANTED.  The Clerk is directed to terminate Plaintiff as a party to this case.

IT IS FURTHER ORDERED that the parties' Motions for Summary Judgment are DENIED.  All other pending motions that concerned briefing the issues before the Court are MOOT.  This case is set for a final pretrial conference, pursuant to Local Rule 16.1, on Monday, November 3, 2008 at 10:30 a.m.  Counsel are directed to first meet with the Court's law clerk at 9:30 a.m. on that date for a preliminary review.  This case is set for a bench trial on December 8, 2008 at 9:00 a.m.

ENTERED this <u>2nd</u> day of September, 2008.

<u>s/ Joe B. McDade</u>
Joe Billy McDade
United States District Judge
